## PLUNKETT v. CALHOUN, Prohibition Administrator, et al.

District Court, D. New Jersey.
Jan. 22, 1931.

Harold Simandl and Sidney Simandl, both of Newark, N. J., for complainant.

Phillip Forman, U. S. Atty., of Trenton, N. J., for defendants.

FAKE, District Judge.

The bill in this cause prays, among other things, that certain evidence seized by the defendants in a raid on a garage building on Alyea street, in the city of Newark, be suppressed as having been seized in violation of complainant's constitutional rights. The issues involved came on for hearing pursuant to a rule to show cause. From the affidavits filed, as well as from the testimony taken in open court, the facts appear as follows: The defendants or some one or more of them, either on information and belief or on mere suspicion, concluded that certain so-called "high power" beer, which had been seized in Utica, Syracuse, and other cities in New York state, had been shipped from Newark, New Jersey, and, in continuing an investigation as to its source, Agent Bradford arrived at Newark, visited the Wilson avenue freight station there, saw beer barrels being wheeled into a freight car and followed a Mack truck from the freight station to the garage where the seizure was subsequently made. On March 5th he detected "the odor of beer" coming from a vacant space under the door of the garage. On March 14th, another agent, Caffey, by name, moved into an apartment near the garage where he and two other prohibition agents maintained a 24-hour watch over the garage until the seizure was made. In the interim, they witnessed the passage of many trucks into and out of the garage, many of them laden with beer barrels. Caffey also noted the odor of beer emanating from the garage premises; heard sounds from the garage peculiar to the operation of beer racking machines and bung driving, and noticed other suspicious circumstances about the premises. The defendants' affidavits are poorly drawn, abounding in immaterial matter, hearsay, indirection, and much that is argumentative. However, for present purposes it is sufficient to find that the agents saw enough, heard enough, and smelled enough to conclude that beer was being barreled in the garage and hauled away therefrom.

Directly across from the Alyea street entrance of the garage was the brewery of the Superior Manufacturing Company, operating under a cereal beverage permit. A pipe line ran under Alyea street through which beer was piped from the brewery to the garage, supplying beer directly from the brewery to the racking machines in the garage. The pipe line was not positively known to the agents until they had forced their way into the garage and thereafter proved its existence. However, Agent Caffey, prior to the raid, saw that Alyea street had been opened as for a pipe line between the garage and the brewery, and saw sections of pipe about the

spot, such as are left over after pipe connections are made.

■ There is nothing in the evidence upon which a conclusion may be formed as to any actual knowledge on the part of the agents as to the alcoholic content of the beer they smelled prior to the seizure, except that Agents Caffey and Franz drank beer from a jug which Franz saw brought out of the garage, and which Caffey says, as one experienced in drinking alcoholic beverages, had an intoxicating effect upon him and contained alcohol in excess of the lawful limit. From all of which I find that the agents had factual premises upon which to base a reasonable conclusion that the garage was being operated in conjunction with the brewery, and that beer, containing an alcoholic content in excess of that permitted under the law, was being transported therefrom.

From documentary evidence offered at the hearing, it appears that the garage was in the possession of the complainant, but it is suggesting too much to ask this court to believe that such possession was anything other than a paper scheme to hide the fact that the garage was a racking room of the brewery. The complainant could not have been ignorant of the fact that the garage and the brewery were being operated together. Nor could he avoid knowing that the pipe line joined the garage to the brewery, since beer is not known to gush up out of the earth as from a natural spring.

Taking all of the admissible facts into account, the conclusion must be reached that the garage was in truth a racking room of the brewery, and the complainant here, having full knowledge thereof, was a mere dummy for the brewery, so far as possession thereof was concerned.

■■ Since there was a continuing physical union between the garage and the brewery, by and through which they were operated as one plant, the law pertaining to reasonable search and seizure will apply only in so far as it is directed toward a brewery operating under a cereal beverage permit. And in this connection, it is pertinent to examine the language of the permit. Paragraph 2 of the permit reads as follows: "That the permittee will keep the files and records pertaining to the business conducted under this permit on the premises covered by the permit, and will make all reports required of him by law or regulation, and will, upon proper request, promptly allow the permit inspection to be made by any official or officer of the Bureau of Prohibition, of such files and records, and of all the premises and property used for or in connection with any operations under this permit, including the stocks of intoxicating liquors on hand, and all vehicles passing into or out of said premises."

Section 103 of regulations 2 reads: "Any administrator, assistant or deputy administrator, attorney, prohibition agent inspector, investigator, or other officer of the Bureau of Prohibition has authority to inspect the files and records, stocks of liquors, and premises described in the permit, including any vehicle used in the conduct of the permit business, of any permittee operating under the provisions of the national prohibition act and internal revenue laws. Inspections may be made at any and all times not inconsistent with the proper conduct of the business. Any officer desiring to make an inspection will properly identify himself upon making demand therefor."

The provisions of the permit, as well as the provisions of the regulations, are binding upon the complainant, for, whether the permit was issued to him or not, his knowledge of the operations between the garage and the brewery estop him from claiming that he was anything other than an operative of the brewery holding possession of the garage as and for a racking room of the brewery.

■ Under the terms of the permit, the prohibition agents had such right to enter the garage premises as would inure to them in entering property used in connection with the operations under the permit of the Superior Manufacturing Company. That the garage was not specifically covered in the application for the permit avails nothing, since the permit covers all premises used in connection with the premises licensed.

At a time when numerous persons were present in the garage, one of the prohibition agents knocked upon the garage door; made known his official position, and demanded entrance. Upon being ignored, the agents forced the door open and made the search and seizure complained of.

Bearing in mind that this is a proceeding in equity, where the complainant must appear with clean hands, and considering all of the pertinent facts disclosed by the record, my conclusion is that the search and seizure, in this instance, was not in violation of complainant's constitutional rights.

An order in conformity with these views will be entered.